NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| OLUKAYODE DAVID OJO, | : : : | Civil Action No. 14-4347 (JLL) |
| Plaintiff, | : : |  |
| v. | : : | **OPINION** |
| ANN LUONG, et al., | : : |  |
| Defendants. | : : : |  |

**LINARES**, District Judge:

      Plaintiff, Olukayode David Ojo, filed a complaint against Defendants, Ann Luong, Brian Ennesser, Michael "Mike" Bickings, Scott Urben, Matthew Nahas, Ray Miller, Anthony Sardanopoli, Hugo Reibeiro and numerous John Does, on July 7, 2014.  (ECF No. 1).  On March 11, 2015, this Court granted Plaintiff's application to proceed *in forma pauperis*.  (ECF No. 8).  At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  Also before the Court is Plaintiff's application for pro bono counsel (Attachment 4 to ECF No. 1).  For the reasons set out below, this Court will permit Plaintiff's Fifth Amendment claims to proceed at this time and dismiss Plaintiff's remaining claims as time barred.  The court will also dismiss without prejudice the State Trooper Defendants as no claims against them remain following dismissal of the time barred claims.  Finally, Plaintiff's application for pro bono counsel is denied.

      **I.  BACKGROUND**

The following facts are drawn from the allegations contained in Plaintiff's complaint. (ECF No. 1).  Plaintiff is a citizen of Nigeria who, prior to his arrest, resided in Irvington New Jersey.  (ECF No. 1 at ¶ 4).  Plaintiff, at the time he filed his complaint, was incarcerated in the Orange County Jail in Goshen, New York.  (*Id.*).  Defendants Ann Luong, Brian Ennesser, Michael Bickings, Scott Urben, Matthew Nahas, and Ray Miller are all FBI agents belonging to Squad 42 out of the Bureau's New York office who were involved in Plaintiff's arrest.  (*Id.* at ¶ 5-10).  Defendants Anthony Sardanopoli and Hugo Reibeiro are both New Jersey State Troopers who initiated the traffic stop which led to Plaintiff's arrest.  (*Id.* at ¶11-12).  The remaining John Does are all also alleged to be New Jersey State Police officers who were involved in the search of Plaintiff's vehicle as detailed below.  (*Id.* at ¶13-18).

Plaintiff's claims arise out of the events which culminated in his arrest, prosecution, and conviction on conspiracy to commit wire fraud charges.  (*See United States v. Ojo*, No. 13-334 (E.D.N.Y. 2013), Indictment at ECF No. 1, Jury Verdict at ECF No. 50).  Plaintiff alleges that, while at home on July 11, 2011, the FBI agent defendants "illegally" used a tracking device to monitor and follow him via his cell phone.  (ECF No. 1 at ¶19).  During that afternoon, Plaintiff left his home, and while driving a car was pulled over by Defendants Sardanopoli and Reibeiro. (*Id.* at ¶20-21).  While the troopers were engaged in the traffic stop, six more New Jersey State Police cars arrived, out of which the John Doe Defendants exited with weapons drawn.  (*Id.*). While the two original troopers questioned Plaintiff regarding the traffic stop, the other officers surrounded his vehicle.  (*Id.*).  Plaintiff alleges that he was then falsely cited for failure to wear a seatbelt by Defendants Sardanopoli and Reibeiro.[1]  (*Id.* at 21).  The original two troopers then

---

[1] Plaintiff doesn't reveal which trooper actually issued the ticket, only that one of the original

2

left the scene, while the remaining armed officers held Plaintiff at the scene of the traffic stop, detaining him on the roadside while the FBI Agent Defendants arrived on the scene. (*Id.* at ¶¶22-23). Plaintiff specifically alleges that he was directed to "shut up and . . . sit barely on a very hot paved road at approximately 3:40 PM in the Summer season with a very high degree temperature." (*Id.* at ¶26). Plaintiff also alleges that the state policemen refused his requests for a lawyer and to contact his sister via his cell phone to request that she procure a lawyer for Plaintiff. (*Id.* at ¶22).

Defendants Luong and Ennesser then approached Plaintiff and requested Plaintiff's consent to search his vehicle, which Plaintiff refused. (*Id.* at ¶23). Following his refusal, Defendants summoned another State Police car, which brought a police dog to the scene. (*Id.* at ¶24). The dog was then used to search the car, both within and without the vehicle and its trunk. (*Id.*). Following the dog search, Defendants again approached Plaintiff and requested his consent to search the car, which Plaintiff refused, again requesting that he be permitted to acquire counsel. (*Id.* at ¶25). Plaintiff was also again informed that he was not to use his cell phone while detained, including to call his family in attempts to acquire a lawyer. (*Id.*). Plaintiff also alleges that he began to request that passers-by obtain a lawyer for him and that in response the state policemen again pointed their weapons at him and instructed Plaintiff to remain quiet and seated on the roadside. (*Id.* at ¶26).

Plaintiff claims that he was thereafter approached by Defendant Ennesser who "coerced" him into signing a consent to search form. (*Id.* at ¶28). Specifically, Plaintiff alleges that Ennesser told him that "this is how we use to do in America, they were just trying to give you a

---

two "falsely" issued a ticket for a seatbelt violation.

chance, in America it is give and take, if it is given to you and you refused we will take it back, and if you cooperate it will be good for you." (*Id.*). Plaintiff also alleges that he was "threatened and coerced" into signing the statement. (*Id.*).

Following the consent to search form, Plaintiff was directed to empty his pockets and was patted down by the officers. (*Id.* at ¶29). The FBI and John Doe Defendants then searched the vehicle, in which they found four IDs. (*Id.*). Plaintiff alleges that the FBI defendants then led him to their van and questioned him without providing him a *Miranda* warning. (*Id.*). Plaintiff alleges that he was then questioned, threatened, and coerced into admitting that he had been sent the IDs so as to collect money from Western Union. (*Id.*). Plaintiff alleges that he was told that he would be turned over to the state troopers if he did not cooperate, but "if you cooperate . . . the armed troopers will be excused from the scene and [the FBI] will help you." (*Id.*). Plaintiff alleges that he was then transported to various Western Union locations and directed to withdraw the money, but was unable to do so as no money was available. (*Id*. at ¶30).

Plaintiff states that he was then taken to the FBI office in New York, where he continued to be interrogated "in the absence of counsel and without being given certain warnings for more than eight hours." (*Id.* at ¶31). At 11:15 p.m. that night, Plaintiff was presented with another consent to search form which he was told was a duplicate of the one he'd signed on the road side, which he apparently signed. (*Id.* at ¶32). Plaintiff was also provided with a *Miranda* warning form which he signed at which point he alleges he "chose the option of being represented by an attorney." (*Id.*). Plaintiff was then searched a final time, and had his belt removed before being transported to detention. (*Id.*).

Plaintiff was thereafter indicted for conspiracy to commit wire fraud on August 11, 2011.

4

(*See United States v. Ojo*, No. 11-570 (E.D.N.Y.), Indictment at ECF No. 6). On May 14, 2013, Plaintiff was charged by way of superseding indictment with conspiracy to commit wire fraud and conspiracy to commit fraud in connection with identification documents. (*See United States v. Ojo*, No. 11-570 (E.D.N.Y.), Superseding Indictment at ECF no. 74). On June 5, 2013, upon motion by the Government, the indictment was dismissed without prejudice based on a one day Speedy Trial Act violation. (*See United States v. Ojo*, No. 11-570 (E.D.N.Y.), Order at ECF No. 82). Plaintiff was thereafter re-indicted on that same day and charged again with conspiracy to commit wire fraud and conspiracy to commit fraud in connection with identification documents. (*See United States v. Ojo*, No. 13-334 (E.D.N.Y. 2013), Indictment at ECF No. 1). Prior to trial, Plaintiff filed a petition for a writ of habeas corpus which was denied on August 6, 2013. (ECF No. 1 at ¶36, *see Ojo v. United States*, No. 13-4153 (E.D.N.Y.)). Plaintiff was thereafter found guilty on both counts following a jury trial on August 8, 2013.[2] (ECF No. 1 at ¶35; *See United States v. Ojo*, No. 13-334 (E.D.N.Y. 2013), Jury verdict at ECF No. 50). Plaintiff filed a direct appeal of his conviction with the Court of Appeals for the Second Circuit, which has yet to be decided. (*See United States v. Ojo*, No. 14-635 (2d Cir.)).

## II.  DISCUSSION

### A.  Legal Standard

---

[2] Plaintiff also alleges that he was subjected to an "unlawful" suppression hearing during the original indictment's pendency and that the "illegally" obtained evidence was used against him at trial. (ECF No. 1 at ¶34-35). As Plaintiff does not raise any claims as to the suppression hearing, the Court does not discuss the hearing in detail. The Court does note, however, that the Eastern District of New York denied this motion in its entirety on the record following a hearing. (*See United States v. Ojo*, No. 11-570 (E.D.N.Y.), Minute Entry at ECF No. 42).

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because Plaintiff is a prisoner who has been granted *in forma pauperis* status and seeks damages from governmental employees.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim[3], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*,

---

[3] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

764 F.3d 303, 308 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

**B. Analysis**

Plaintiff asserts that Defendants violated his First, Fourth, Fifth, Eighth, and Fourteenth Amendment Rights and are thus liable to him under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). 42 U.S.C. § 1983 provides "private citizens with a means to redress violations of federal law committed by state individuals." *Woodyard v. Cnty. Of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013). To assert a claim under § 1983, Plaintiff must show that he was deprived of a federal constitutional or statutory right by a state actor. *Id.* When evaluating the merits of a § 1983 claim, the Court must identify the contours of the underlying right Plaintiff claims Defendants violated and determine whether Plaintiff has properly alleged the violation of such a right at all. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). "A *Bivens* action . . . is the federal equivalent of the § 1983 cause of action against state actors, [it] will lie where the defendant has violated the plaintiff's rights under color of federal law." *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cr. 2001). As the confines of a *Bivens* action and a claim brought under § 1983 are usually coterminous, the same legal principles apply. *Id.*; *Paton v.* LaPrade, 524 F.2d 862, 871 (3d Cir. 1975). Based on the facts and allegations contained in Plaintiff's complaint, this Court construes Plaintiff's complaint as asserting the following claims: that Defendants violated Plaintiff's First Amendment right to free

7

speech by preventing him from calling his sister and ordering him to stop asking passers-by to call an attorney for him, that he was illegally searched in violation of the Fourth and Fourteenth[4] Amendments in so much as the FBI tracked his cell phone, that he was subject to illegal search and seizure during the traffic stop and subsequent searches while detained on the roadside as well as in so much as he was forced to sit on the hot pavement during the stop; that Plaintiff's Fifth Amendment rights to a lawyer and against self-incrimination were violated when Plaintiff was questioned by FBI agents allegedly without receiving *Miranda* warnings or counsel after Plaintiff requested an attorney, and that Plaintiff was subject to an unreasonable seizure in violation of the Fourth Amendment by the FBI agents and state police in so much as he was allegedly forced to sit on the hot roadside for a considerable period.[5]

1. **Timeliness of Plaintiff's Fourth and First Amendment Claims**

    Plaintiff filed his civil rights complaint on July 7, 2014. (ECF No. 1). The events about

---

[4] This claim involves the Fourteenth Amendment only in so much as it is applied against state actors.

[5] Plaintiff asserts that his counsel and punishment/hot roadside claims would also arise out of the Sixth and Eighth Amendments respectively. As Plaintiff had not yet reached the onset of adversarial judicial proceedings, let alone been convicted, neither Amendment's protections applied. *See Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 892 (3d Cir. 1999) (Sixth Amendment rights attach only "at or after the initiation of adverar[ial] judicial proceedings"); *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (Eight Amendment protections do not apply until "after sentence and conviction"). In so much as Plaintiff claims that he was subject to cruel and unusual punishment when he was forced to sit on the street during the traffic stop and subsequent searches, he is challenging the reasonableness of a seizure of his person. *See Graham v. Connor*, 490 U.S. 386, 394-96 (1989) (The Fourth Amendment provides protection against physically abusive conduct during an arrest or investigatory stop).

which Plaintiff complains, however, occurred on July 11, 2011.  The statute of limitations for a civil rights action brought pursuant to either § 1983 or *Bivens* is taken from the forum state's personal injury statute.  *Hughes v. Knieblher*, 341 F. App'x 749, 752 (3d Cir. 2009).  New Jersey's statute of limitations for personal injury actions is two years.  *Id.*  Plaintiff's claims would therefore be barred if they accrued more than two years before July 7, 2014.  *Id.*  The date of accrual for a § 1983 or *Bivens* action occurs when "the plaintiff knows of or has reason to know of the injury." *Id.*; *see also Woodyard v. Cnty. Of Essex*, 514 F. App'x 177, 184 (3d Cir. 2013).  The Court must therefore evaluate the date of accrual for each of Plaintiff's claims.

The majority of Plaintiff's claims are claims regarding the allegedly illegal search and seizure of Plaintiff's person, phone, and vehicle.  These claims include Plaintiff's claim that his phone was illegally searched prior to his stop, that he was illegally stopped, that his car was repeatedly illegally searched, and that he was seized in physically abusive circumstances.  The date of accrual for claims of an illegal search or seizure (not including claims for false imprisonment or arrest) occurs when the plaintiff indisputably knew about the alleged faults of the search or seizure, which generally coincides with the occurrence of the illegal search or seizure.  *See Woodson v. Payton*, 503 F. App'x 110, 112 (3d Cir. 2012).  As Plaintiff pleads that the initial stop of his vehicle was based on the false statement by the Troopers that he had not been wearing his seatbelt, he was clearly aware of the fault in the initial seizure at the time he was pulled over in July of 2011.  Even if the Court gives Plaintiff the benefit of the doubt, Plaintiff clearly knew of the alleged faults in the search and seizure of his person and vehicle when he filed his original motion to suppress during his criminal case,[6] which occurred on February 27, 2012.  (*See United*

---

[6] Plaintiff incorporates by reference both his criminal trial and his suppression motion/hearing in

9

*States v. Ojo*, No. 11-570 (E.D.N.Y.), Motion to Suppress at ECF 34).  Likewise, Plaintiff would certainly have known about the tracing of his phone following the filing of the State's response to that motion on April 10, 2012 which clearly discusses the trace.  (*See United States v. Ojo*, No. 11-570 (E.D.N.Y.), Memorandum in Opposition at ECF No. 38).  Thus, even if Plaintiff was not "indisputably aware" of the illegal searches on the date he was stopped (which does not appear to be the case), Plaintiff's date of accrual was at the latest April 10, 2012.  The statute of limitations on those claims had thus run by, at the latest, April 10, 2014.  Plaintiff's Fourth Amendment illegal search and seizure claims are thus time barred and must be dismissed.  *Woodson*, 503 F. App'x at 112.

Plaintiff also alleges a violation of his First Amendment right to free speech.  In the absence of a continuing violation, the accrual date for a First Amendment freedom of expression violation is the date on which the violation itself occurred.  *See O'Connor v. City of Newark*, 440 F.3d 125, 126-28 (3d Cir. 2006).  The violation Plaintiff alleges occurred on July 11, 2011.  Plaintiff's allegations of a First Amendment violation are therefore time barred.  *Id.*  As Plaintiff's First and Fourth Amendment claims are time barred, they shall be dismissed as such at this time.

### 2. Plaintiff's Fifth Amendment claims

The final type of claim Plaintiff seeks to bring is a claim that his *Miranda* rights were violated when he was questioned without being read his rights and without being provided an attorney after he repeatedly requested one.  The failure of a government agent to provide proper

---

his complaint.

10

*Miranda* warnings during custodial interrogation, or to provide a lawyer during interrogation once one is requested, does not, in and of itself, give rise to a claim under § 1983 or *Bivens*. *Chavez v. Martinez*, 538 U.S. 760, 773 (2003); *see Giuffre v. Bissell*, 31 F.3d 1241, 1256 (3d Cir. 1994) ("violations of the prophylactic *Miranda* procedures do not amount to violations of the constitution itself . . . the 'right to counsel' during custodial interrogation recognized in *Miranda* . . . is merely a procedural safeguard, and not a substantive right"); *see also Renda v. King*, 347 F.3d 550, 557 (3d Cir. 2003) (upholding *Giuffre*). A *Miranda* claim only becomes actionable under §1983 or *Bivens* when a statement elicited in the absence of those warnings is used at a Plaintiff's criminal trial. *Chavez*, 538 U.S. at 773; *see also Large v. Cnty. Of Montgomery*, 307 F. App'x 606, 607 (3d Cir. 2009). Thus, to state a claim for relief, Plaintiff must allege that the FBI agents not only violated *Miranda*, but then introduced the evidence obtained from that violation at trial, thus violating Plaintiff's right against self-incrimination. *Large*, 307 F. App'x at 607; *Renda* 347 F.3d at 559.

Here, Plaintiff has alleged that the FBI agents both interrogated him without providing Miranda warnings, as well as denied him counsel during that interrogation. Plaintiff has also alleged that the information elicited from him during that interrogation was then used against him during his criminal trial in August of 2013.[7] As such, Plaintiff has sufficiently pled a Fifth Amendment violation under §1983, and Plaintiff's Fifth Amendment claim shall proceed at this

---

[7] Because a Fifth Amendment violation occurs when the statements are used at trial, and not during the interrogation itself, this claim is not barred by the statute of limitations as the violation Plaintiff alleges, if one exists, would have occurred in August of 2013, some eleven months before he filed his complaint. *See Large*, 307 F. App'x at 608-09.

11

time.[8]  *Large*, 307 F. App'x at 607; *Renda* 347 F.3d at 559.  As Plaintiff's Fifth Amendment claim is raised only against the FBI Agent Defendants, the State Trooper defendants will be dismissed without prejudice as no claims against them remain at this time.

A final wrinkle in Plaintiff's claim as it goes forward, however, arises because Plaintiff has named the FBI agent Defendants in both their personal and official capacities.  A *Bivens* action for monetary damages may be brought against a federal agent in his individual capacity only. *Debrew v. Auman*, 354 F. App'x 639, 641 (3d Cir. 2009).  Such an action may not be filed against the agent in his official capacity.  *Id.*  As such, Plaintiff's complaint must be dismissed as to the FBI defendants in their official capacity **only**.[9]

### 3.  Plaintiff's Request for the Appointment of Pro Bono Counsel

Plaintiff has also submitted an application for the appointment of pro bono counsel.

---

[8] This Court is unable, at this time, address whether this claim would be barred by *Heck v. Humphrey*, 512 U.S. 447 (1994).  Under the *Heck* bar, a claim may not be brought under § 1983 where a decision in favor of Plaintiff on that claim would necessarily imply the invalidity of his conviction.  *Large*, 307 F. App'x at 607-608.  As Plaintiff alleges that his statements were used at trial, *Heck* may be implicated in this case.  *See James v. York Cnty. Police Dep't*, 160 F. App'x 126, 133 (3d Cir. 2005) (finding that a Fifth Amendment claim asserting compelled self-incrimination can imply the invalidity of a plaintiff's conviction).  A Fifth Amendment violation, however, does not necessarily imply that a plaintiff's conviction is unlawful where "other independent evidence sufficient to result in [a plaintiff's] conviction" was admitted during trial.  *Large*, 307 F. App'x at 608.  As such, this Court cannot determine whether Plaintiff's Fifth Amendment claim is barred under the *Heck* doctrine without first being provided with trial transcripts which make clear that Plaintiff's Fifth Amendment claims necessarily implicate the invalidity of his conviction.

[9] Although Plaintiff technically requests injunctive relief as well, the prospective relief Plaintiff requests is an injunction declaring that the FBI must comply with the Fourth Amendment, which is already the case, and thus the requested injunction would be redundant and unnecessary.

Pursuant to 28 U.S.C. § 1915(e)(1), this Court may request that an attorney represent any person who is unable to afford counsel. The Court has broad discretion to decide whether such a request is warranted. *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002); *see also Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). In order to merit a request for counsel,

> the indigent plaintiff's case must have some arguable merit in fact and law. If so, the court should then consider a number of additional factors including: (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his or her behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses.

*Cuevas v. United States*, 422 F. App'x 142, 144-45 (3d Cir. 2011) (citing the factors annunciated in *Tabron*, 6 F.3d at 155-57).

Plaintiff requests counsel as he is unable to retain a lawyer, believes that his case is legally complex, allegedly has a limited grasp of "English and American Accent," and believes an attorney will be necessary for discovery purposes. (Document 4 attached to ECF No. 1). Here, the Court has determined that Plaintiff's financial situation merits the granting of *in forma pauperis* status, and will permit Plaintiff's claim to proceed as he has pled a facially plausible claim under *Bivens* for a violation of his Fifth Amendment rights. The Court also recognizes that credibility may be an issue in this case as Plaintiff has pled that he did sign a *Miranda* waiver after his interrogation, so the question of when the warnings were given and what was said prior to the warnings may be a question of import.

That said, the Court does not find that a request for counsel is warranted at this time. Plaintiff has pled a straightforward Fifth Amendment claim, and his complaint suggests that he

13

has understands the nature of this claim and would be able to present it effectively. It is unlikely that significant discovery or expert testimony will be necessary in this case, given that Defendants will likely supply all of the necessary transcripts and documents as part of their defense. As for Plaintiff's claim that he has a limited grasp of English, plaintiff's articulate complaint and the documents he has attached thereto appear to bely his suggestion that he cannot understand English sufficiently to litigate his case.[10] To the extent that Plaintiff's argument regarding his lack of understanding applies only to spoken English (which may be the case given how he worded the claim in his counsel application), such an issue would not become problematic until such time as a hearing on the record becomes necessary, at which time Plaintiff would be able to reapply for pro bono counsel. As the *Tabron* factors do not support a request for pro bono counsel at this time, this Court will deny Plaintiff's application at this time.

## III. CONCLUSION

For the reasons stated above, the Court will permit Plaintiff's Fifth Amendment claim against Defendants Luong, Enneser, Bickings, Urben, Nahas, and Miller in their individual capacities only to proceed at this time. Plaintiff's remaining claims are dismissed as time barred, and Defendants Sardanopoli, Reibeiro, and the John Doe defendants are dismissed from this action without prejudice. Finally, Plaintiff's application for pro bono counsel is denied. An appropriate order follows.

---

[10] Nothing in the complaint or attached documents leads this Court to believe that someone other than the Plaintiff drafted these documents.

                                                    s/ Jose L. Linares  
                                                    JOSE L. LINARES  
                                                    U.S. DISTRICT JUDGE