\*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| OLUKAYODE DAVID OJO, | |
| Plaintiff, | Civil Action No. 14-4347 (JLL) |
| v. | **OPINION** |
| AN N. LUONG, et al., | |
| Defendants. | |

**LINARES**, District Judge:

Presently before the Court is Defendants' motion to dismiss or in the alternative for summary judgment, brought pursuant to Fed. R. Civ. P. 12(b)(6) and/or 56, seeking the dismissal of the sole remaining claim presented in Plaintiff's complaint. (ECF No. 20). Petitioner filed a response (ECF No. 24), to which Defendants replied. (ECF No. 27). Following this Court's grant of permission (ECF No. 30), Plaintiff also filed a sur-reply. (ECF No. 31). For the following reasons, this Court will grant the motion to dismiss, and will dismiss Plaintiff's sole remaining claim – that Defendants violated his Fifth Amendment rights by interrogating him in the absence of *Miranda* warnings.

## I. BACKGROUND

In this Court's previous opinion screening Plaintiff's complaint pursuant to 28 U.S.C. §§

1915(e)(2)(B) and 1915A, this Court provided the following summary of the facts alleged in Plaintiff's complaint:

> The following facts are drawn from the allegations contained in Plaintiff's complaint. (ECF No. 1). Plaintiff is a citizen of Nigeria who, prior to his arrest, resided in Irvington New Jersey. (ECF No. 1 at ¶ 4). Plaintiff, at the time he filed his complaint, was incarcerated in the Orange County Jail in Goshen, New York. (*Id.*). Defendants Ann Luong, Brian Ennesser, Michael Bickings, Scott Urben, Matthew Nahas, and Ray Miller are all FBI agents belonging to Squad 42 out of the Bureau's New York office who were involved in Plaintiff's arrest. (*Id.* at ¶ 5-10). Defendants Anthony Sardanopoli and Hugo Reibeiro are both New Jersey State Troopers who initiated the traffic stop which led to Plaintiff's arrest. (*Id.* at ¶11-12). The remaining John Does are all also alleged to be New Jersey State Police officers who were involved in the search of Plaintiff's vehicle as detailed below. (*Id.* at ¶13-18).
>
> Plaintiff's claims arise out of the events which culminated in his arrest, prosecution, and conviction on conspiracy to commit wire fraud charges. (*See United States v. Ojo*, No. 13-334 (E.D.N.Y. 2013), Indictment at ECF No. 1, Jury Verdict at ECF No. 50). Plaintiff alleges that, while at home on July 11, 2011, the FBI agent defendants "illegally" used a tracking device to monitor and follow him via his cell phone. (ECF No. 1 at ¶19). During that afternoon, Plaintiff left his home, and while driving a car was pulled over by Defendants Sardanopoli and Reibeiro. (*Id.* at ¶20-21). While the troopers were engaged in the traffic stop, six more New Jersey State Police cars arrived, out of which the John Doe Defendants exited with weapons drawn. (*Id.*). While the two original troopers questioned Plaintiff regarding the traffic stop, the other officers surrounded his vehicle. (*Id.*). Plaintiff alleges that he was then falsely cited for failure to wear a seatbelts by Defendants Sardanopoli and Reibeiro[.] (*Id.* at 21). The original two troopers then left the scene, while the remaining armed officers held Plaintiff at the scene of the traffic stop, detaining him on the roadside while the FBI Agent Defendants arrived on the scene. (*Id.* at ¶22-23). Plaintiff specifically alleges that he was directed to "shut up and . . . sit barely on a very hot paved road at approximately 3:40 PM in the Summer season with a very high degree temperature." (*Id.* at ¶26). Plaintiff also alleges that the state policemen refused his requests for a lawyer and to contact his sister via his cell phone to

2

request that she procure a lawyer for Plaintiff. (*Id.* at ¶22).

Defendants Luong and Ennesser then approached Plaintiff and requested Plaintiff's consent to search his vehicle, which Plaintiff refused. (*Id.* at ¶23). Following his refusal, Defendants summoned another State Police car, which brought a police dog to the scene. (*Id.* at ¶24). The dog was then used to search the car, both within and without the vehicle and its trunk. (*Id.*). Following the dog search, Defendants again approached Plaintiff and requested his consent to search the car, which Plaintiff refused, again requesting that he be permitted to acquire counsel. (*Id.* at ¶25). Plaintiff was also again informed that he was not to use his cell phone while detained, including to call his family in attempts to acquire a lawyer. (*Id.*). Plaintiff also alleges that he began to request that passers-by obtain a lawyer for him and that in response the state policemen again pointed their weapons at him and instructed Plaintiff to remain quiet and seated on the roadside. (*Id.* at ¶26).

Plaintiff claims that he was thereafter approached by Defendant Ennesser who "coerced" him into signing a consent to search form. (*Id.* at ¶28). Specifically, Plaintiff alleges that Ennesser told him that "this is how use to do it in America, they were just trying to give you a chance, in America it is give and take, if it is given to you and you refused we will take it back, and if you cooperate it will be good for you." (*Id.*). Plaintiff also alleges that he was "threatened and coerced" into signing the statement. (*Id.*).

Following the consent to search form, Plaintiff was directed to empty his pockets and was patted down by the officers. (*Id.* at ¶29). The FBI and John Doe Defendants then searched the vehicle, in which they found four IDs. (*Id.*). Plaintiff alleges that the FBI defendants then led him to their van and questioned him without providing him a *Miranda* warning. (*Id.*). Plaintiff alleges that he was then questioned, threatened, and coerced into admitting that he had been sent the IDs so as to collect money from Western Union. (*Id.*). Plaintiff alleges that he was told that he would be turned over to the state troopers if he did not cooperate, but "if you cooperate . . . the armed troopers will be excused from the scene and [the FBI] will help you." (*Id.*). Plaintiff alleges that he was then transported to various Western Union locations and directed to withdraw the money, but was unable to do so as no money was available. (*Id.* at ¶30).

3

> Plaintiff states that he was then taken to the FBI office in New York, where he continued to be interrogated "in the absence of counsel and without being given certain warnings for more than eight hours." (*Id.* at ¶31). At 11:15 p.m. that night, Plaintiff was presented with another consent to search form which he was told was a duplicate of the one he'd signed on the road side, which he apparently signed. (*Id.* at ¶32). Plaintiff was also provided with a *Miranda* warning form which he signed at which point he alleges he "chose the option of being represented by an attorney." (*Id.*). Plaintiff was then searched a final time, and had his belt removed before being transported to detention. (*Id.*).
>
> Plaintiff was thereafter indicted for conspiracy to commit wire fraud on August 11, 2011. (*See United States v. Ojo*, No. 11-570 (E.D.N.Y.), Indictment at ECF No. 6). On May 14, 2013, Plaintiff was charged by way of superseding indictment with conspiracy to commit wire fraud and conspiracy to commit fraud in connection with identification documents. (*See United States v. Ojo*, No. 11-570 (E.D.N.Y.), Superseding Indictment at ECF no. 74). On June 5, 2013, upon motion by the Government, the indictment was dismissed without prejudice based on a one day Speedy Trial Act violation. (*See United States v. Ojo*, No. 11-570 (E.D.N.Y.), Order at ECF No. 82). Plaintiff was thereafter re-indicted on that same day and charged again with conspiracy to commit wire fraud and conspiracy to commit fraud in connection with identification documents. (*See United States v. Ojo*, No. 13-334 (E.D.N.Y. 2013), Indictment at ECF No. 1). Prior to trial, Plaintiff filed a petition for a writ of habeas corpus which was denied on August 6, 2013. (ECF No. 1 at ¶36, *see Ojo v. United States*, No. 13-4153 (E.D.N.Y.)). Plaintiff was thereafter found guilty on both counts following a jury trial on August 8, 2013.[] (ECF No. 1 at ¶35; *See United States v. Ojo*, No. 13-334 (E.D.N.Y. 2013), Jury verdict at ECF No. 50).

(ECF No. 9 at 2-5).

On April 21, 2015, this Court issued an order and opinion which screened Petitioner's complaint and dismissed all of his claims save for his claim that the FBI Defendants violated his Fifth Amendment rights by interrogating him in absence of *Miranda* warnings and using the

4

statements derived therefrom against Petitioner at trial. (*Id.* at 10-12; ECF No. 10). In permitting that claim to proceed, however, this Court made the following observations:

> The final type of claim Plaintiff seeks to bring is a claim that his *Miranda* rights were violated when he was questioned without being read his rights and without being provided an attorney after he repeatedly requested one. The failure of a government agent to provide proper *Miranda* warnings during custodial interrogation, or to provide a lawyer during interrogation once one is requested, does not, in and of itself, give rise to a claim under [42 U.S.C.] § 1983 or *Bivens* [*v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)]. *Chavez v. Martinez*, 538 U.S. 760, 773 (2003); *see Giuffre v. Bissell*, 31 F.3d 1241, 1256 (3d Cir. 1994) ("violations of the prophylactic *Miranda* procedures do not amount to violations of the constitution itself . . . the 'right to counsel' during custodial interrogation recognized in *Miranda* . . . is merely a procedural safeguard, and not a substantive right"); *see also Renda v. King*, 347 F.3d 550, 557 (3d Cir. 2003) (upholding *Giuffre*). A *Miranda* claim only becomes actionable under §1983 or *Bivens* when a statement elicited in the absence of those warnings is used at a Plaintiff's criminal trial. *Chavez*, 538 U.S. at 773; *see also Large v. Cnty. Of Montgomery*, 307 F. App'x 606, 607 (3d Cir. 2009). Thus, to state a claim for relief, Plaintiff must allege that the FBI agents not only violated *Miranda*, but then introduced the evidence obtained from that violation at trial, thus violating Plaintiff's right against self-incrimination. *Large*, 307 F. App'x at 607; *Renda* 347 F.3d at 559.

(ECF No. 9 at 10-11). Based on this recitation of the relevant caselaw, this Court permitted Plaintiff's *Bivens* claim based on the violation of his Fifth Amendment rights to proceed only because Petitioner had specifically alleged that the statements "elicited from him during . . . interrogation [were] used against him during his criminal trial." (*Id.* at 11).

Defendants now move to dismiss this final claim based on the assertion that no statements made by Plaintiff during his interrogation were actually used against him at trial. (ECF No. 20). In support of this contention, Defendants have attached to their motions the transcripts of

5

Petitioner's trial in the Eastern District of New York. (Documents 2-5 attached to ECF No. 20). Upon reviewing the transcripts it is clear that no statements made by Plaintiff to law enforcement were admitted during his trial. A review of the record also indicates that most, if not all, of the instances where the fact that Plaintiff talked with the FBI was mentioned at trial occurred during the cross examination of FBI agents by Plaintiff's own attorney. (*See, e.g.,* Document 2 attached to ECF No. 20 at 231-33; Document 3 attached to ECF No. 20 at 310-11). Indeed, the Government specifically objected to an attempt by defense counsel at trial to bring Plaintiff's allegedly non-*Mirandized* statement into evidence during cross examination. (Document 3 attached to ECF No. 20 at 310-11).

## II. DISCUSSION

### A. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n. 3 (3d Cir. 2014) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss for failure to state a claim, a complaint must allege "sufficient factual matter" to show that its claims are facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir.

6

2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Dempster*, 764 F.3d at 308 (quoting *Iqbal*, 556 U.S. at 678). Finally, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim" to survive a motion to dismiss. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

## B. Analysis

### 1. This Court can consider the trial court transcripts in addressing Defendants' motion to dismiss, and need not convert this matter to a motion for summary judgment

Initially, this Court must address the question of whether it can properly consider the trial transcripts provided by Defendants in deciding this motion to dismiss, or whether it would be necessary to convert the motion to one for summary judgment. As the Third Circuit has explained,

> "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). "However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996), *superseded on other grounds by* PSLRA, 15 U.S.C. § 78u-4(b)(2)). "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint – lack of notice to the plaintiff – is dissipated '[w]here the plaintiff has actual notice . . .

7

> and has relied upon these documents in framing the complaint." *Id.* (quoting *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993)). "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Id.*

*Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Publically available court transcripts which have a bearing on the controversy at issue are one such type of document which may be considered without converting a motion to dismiss into one for summary judgment. *See, e.g., Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

Here, Defendants seek to make use of the transcripts of Plaintiff's trial, which are publically available through PACER, to show that no Fifth Amendment violation occurred. This Court may properly consider these transcripts for several reasons. First, they are publically available court transcripts which clearly have a bearing on the claims Plaintiff has presented. *Id.* Second, as Plaintiff's sole remaining claim arises directly out of his claim that his statements to law enforcement were used against him at trial, he has implicitly relied upon what occurred at his trial and in turn the transcripts of that trial are extrinsic documents upon which his complaint is based. *Schmidt*, 770 F.3d at 249. Finally, because Petitioner references his Eastern District of New York criminal matters explicitly in his complaint, and it would therefore it appears that Plaintiff has incorporated those docket sheets by reference into his complaint, the documents on those docket sheets are properly available in a motion to dismiss as they have been incorporated by reference. *Id.* Ultimately, it is clear that Plaintiff certainly had notice that his trial transcripts would be central to his contentions, and as such the underlying rationale for requiring that extrinsic documents not be considered in a motion to dismiss is inapplicable here. *Id.* As such, this Court may consider the transcripts in deciding Defendants' motion to dismiss without converting this

8

matter into a motion for summary judgment. *Id.*

### 2. Plaintiff's Fifth Amendment claims

Following this Court's *sua sponte* screening, only a single claim remains in this matter: Plaintiff's claim that his Fifth Amendment rights were violated by the use of non-*Mirandized* statements against him during his criminal trial. The provided transcripts however, completely refute Plaintiff's factual allegations because they indicate that no such statements were used against Plaintiff in his criminal trial. As this Court explained in its screening opinion, the failure of police to give *Miranda* warnings to a criminal suspect in and of itself does not amount to a constitutional violation actionable under § 1983 or *Bivens*. *See Renda*, 347 F.3d at 557-59. "[I]t is the use of coerced statements during a criminal trial . . . that violates the Constitution." *Id.* at 559. It is thus clear that, regardless of whether Plaintiff was not given proper *Miranda* warnings, because his statements were not used against him at trial based upon the provided transcripts, no violation of Plaintiff's Fifth Amendment rights occurred which would be actionable under *Bivens*. *Id.*

In response to Defendants' motion to dismiss, Plaintiff in essence presents two arguments: first, that his statements were used against him as part of pre-trial proceedings in his criminal cases, and second, that the Government used evidence derived from his statements against him at trial. Plaintiff's first argument is without merit. As *Renda* makes clear, it is only when a non-*Mirandized* statement is used against a person in his criminal trial, as opposed to in the pre-trial context such as in the securing of an indictment, which violates the Fifth Amendment. *Id.; see also Murray v. Earle*, 405 F.3d 278, 285 (5th Cir. 2005) (the "Fifth Amendment privilege against

9

self-incrimination is a fundamental trial right which can be violated only *at* trial, even though pre-trial conduct by law enforcement officials may ultimately impair that right"). As such, no actionable constitutional violation occurs unless and until a statement is used against the criminal defendant at trial in so much as the actual constitutional right at trial is one's right against forced self-incrimination. *Renda*, 347 F.3d at 559. Thus, to the extent that Petitioner now seeks to clarify his claim to assert violations of his Fifth Amendment rights in the pre-trial context, Plaintiff fails to state a claim for relief under *Bivens*.

Plaintiff's second argument, that evidence derived from his statement was allegedly used against him at trial, fairs no better. The exclusionary rule, which permits the exclusion in a criminal case the fruits of a constitutional violation such as an illegal search, "is not 'a personal constitutional right of the party aggrieved.'" *Hector v. Watt*, 235 F.3d 154, 158 (3d Cir. 2000) (quoting *United States v. Peltier*, 422 U.S. 531, 538 (1975)). Thus, the Third Circuit has held in cases based upon Fourth Amendment violations that the victims of such violations "cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution" which came about as a result of the alleged constitutional violation. *Id.* at 157 (quoting *Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999) (holding that § 1983 does not provide redress for the discovery or use of evidence derived from an illegal search)). It is thus clear that, even where the exclusionary rule does apply and the suppression of evidence would be required in a criminal matter, it does not follow that damages may also be obtained in a civil suit based on that fact. It is only direct constitutional violations, and not the discovery of evidence resulting therefrom, which is actionable under § 1983 or its federal counterpart under *Bivens*. *Id.*

10

In any event, even were this not the case, the use of evidence allegedly derived from Plaintiff's statements to the FBI would not be actionable as the "fruit of the poisonous tree" exclusionary rule does not apply in this context. As the Supreme Court has held, physical evidence derived from a voluntary non-*Mirandized* statement is not subject to the exclusionary rule. *United States v. Patane*, 542 U.S. 630, 634, 637 (2004). As the Court made clear in that case, there is "no reason to apply the 'fruit of the poisonous tree' doctrine" to those cases where a criminal defendant asserts a violation of *Miranda*. *Id.* at 642. Only where actual, rather than presumed, coercion is shown does that rule apply to the fruits of a statement given to police. *Id.* at 644. Plaintiff makes no case for coercion other than the lack of *Miranda* warnings in his complaint, and as such the exclusionary rule would not apply to derivative evidence in Plaintiff's case in any event. If the exclusionary rule would not have required the exclusion of the alleged fruits of Plaintiff's alleged non-*Mirandized* statement, then neither *Bivens* or § 1983 is available to provide him redress, either.[1] *See Hector*, 235 F.3d at 157-60. Thus, Plaintiff's arguments do not save his *Miranda* claim, which must be dismissed because Plaintiff's alleged statements were not used against him at trial. *Renda*, 347 F.3d at 559.

## III. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (ECF No. 20) will be

---

[1] Although the Court need not rely on it to decide this case, it is also worth noting that the transcripts of Plaintiff's criminal trial also suggests that the alleged fruits about which Plaintiff complains, specifically his phone number and the records associated therewith, were apparently already known to the FBI prior to Plaintiff's stop, arrest, and statement. (*See* Document 2 attached to ECF No. 20 at 196). Thus, the extent to which they are "fruits" of his statement is dubious at best in any event.

11

GRANTED, and Plaintiff's sole remaining claim shall be DISMISSED. An appropriate order follows.

*[signature]*
Hon. Jose L. Linares,
United States District Judge
4/5/2016